## Metropolitan Life Insurance Company v. Clay, Commissioner of Insurance.

(Decided March 24, 1914.)

### Appeal from Franklin Circuit Court.

1.  Insurance, Life—Control and Regulation in General—Constitutional and Statutory Provisions.—The Act of April 5, 1893, (Acts

1891-2-3, Chap. 171, Section 122, Article 4, page 660), and the Act of July 1, 1893, (Acts 1891-2-3 Chap. 243, page 1260), being Section 659 Ky. Statutes 1894, must be construed in connection with Section 202 of the Constitution, which provides that no foreign corporation shall be permitted to transact business in this State on terms more favorable than those enjoyed by domestic corporations; hence said Acts apply equally to foreign insurance companies as to domestic companies.

2. Insurance, Life—Control and Regulation in General—Supervision By Public Officers.—Where it is proposed by the Commissioner of Insurance to compile at a large expense a list of names and addresses of former policy holders of an insurance company with information respecting the policies held by said former policy-holders, the expense of such investigation to be paid by the company, the amount involved being small, and the purpose of the compilation being to file said list and information in the office of the Commissioner and the result of said filing being the undoubted assertion of alleged contractual rights by said former policy-holders, such investigation and compilation being neither necessary nor justified, upon broad grounds of equity should be restrained.

ALEX. P. HUMPHREY, WM. MARSHALL BULLITT for appellant.

JAMES GARNETT, Attorney General; M. M. LOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Reversing.

Kentucky's first non-forfeiture act, the act of April 5, 1893 (Acts 1891-2-3, Chapter 171, Sec. 122, Art. 4, page 660), provided that no policy of life or endowment insurance issued by any company should thereafter become forfeit or void for non-payment of premiums, after two full annual premiums had been paid thereon; and that in case of default in the payment of any subsequent premium, the policy should automatically be binding upon the company for such amount of paid-up insurance as the then value of the policy and its dividend-additions would purchase. The act further provided that such policy, after the payment of two full annual premiums should have a cash surrender value, and that its holder might upon any subsequent anniversary of its issue, surrender same and claim and recover from the company such surrender value. And, if the policy were one of industrial insurance on which the weekly premiums were not more than fifty cents, then upon default in the payment of premiums after two full annual pre-

miums had been paid thereon, the surrender value should in all cases be payable in cash. The act in question did not specifically provide whether the cash surrender value should upon default after the payment of two full annual premiums, be paid by the company automatically as paid-up insurance was to be effected; or upon claim and demand and surrender of the policy as in the case of the exercise of the option to take the cash surrender value of policies other than those of industrial insurance on which the weekly premiums were not more than fifty cents.

The above-mentioned act was amended by the act of July 1, 1893 (Acts 1891-2-3, Chapter 243, page 1260, Section 659, Kentucky Statutes, 1894); and it was provided that policies of industrial insurance issued by domestic insurance companies should not become forfeit or void for non-payment of premium after five full annual premiums thereon had been paid; and that after the payment of five or more full annual premiums, such policies should have a paid-up insurance value to be effected upon application made to the company within eight weeks after default in the payment of premium; and that such policies should also have a cash surrender value, which the holder of the policy might claim and recover from the company; but that if the weekly premium on such policy of industrial insurance be not more than fifty cents, then such surrender value should in all cases be payable in cash. As to the cash surrender value, there is in the act no specific provision as to when claim must be made therefor.

The Commissioner of Insurance of Kentucky, conceiving that under the Acts mentioned (the latter of which was repealed by the Act of June 28, 1902), a large number of former policy-holders of appellant company were entitled to the payment by said company to them of the cash surrender value upon policies issued by said company and other companies whose obligations it had assumed to discharge, while the acts in question were in force, and permitted by said policy-holders to lapse by default in the payment of premiums thereon, after the payment of the number of full annual premiums in said Acts provided, for the purpose as claimed by him of determining the solvency of appellant company, instituted an investigation of the books and records of appellant company for the purpose of ascertaining the number of such former policy-holders, their names, addresses, and

detailed information respecting the policies formerly held by them, upon which the cash surrender value had not been paid. The commissioner proposed to carry away from the offices of appellant company, and to make a matter of public record in his office, such list and information including the names and addresses of such former policy-holders, and this action appellant company refused to permit, although at the same time conceding the right and power of the commissioner to have unlimited access to its books, records and papers, and to make the most thorough and searching examination of its business and financial condition.

The commissioner thereupon endeavored to coerce permission by appellant company of such investigation, compilation and carrying away of said information, by threat to revoke the license of said company to do business in this State, whereupon appellant company instituted an action in the Franklin Circuit Court to enjoin appellee from proceeding to compile such list of names, addresses and other information, and from taking the same away from its officers, and from filing same in his office as a public record, and from revoking its license to do business in this state, because of its refusal to permit said acts to be done by appellee. A demurrer to the answer of the commissioner, claiming such right under the statute, being overruled, plaintiff elected to stand upon its demurrer, and the court thereupon dismissed the petition; and from that judgment the insurance company appeals.

1. The first question presented upon the appeal is whether the Acts mentioned apply to the business of a foreign insurance company. The Act of April 5, 1893, applied to policies issued by any company, but as that provision was preceded by a sentence which provided that "all policies hitherto issued by any domestic insurance company shall be subject to the provisions of law applicable and in force at the date of such issue," the proper construction of the words "any company," as contained in that Act was left in doubt; and the amended act, of July 1, 1893, specifically named domestic insurance companies and put an end to that uncertainty. But, as section 202 of the Constitution provides that no foreign corporation may transact business in this State upon more favorable conditions than domestic corporations, the court is of the opinion that the Acts in question should and do apply equally to insurance contracts of foreign

insurance companies as to those of domestic insurance companies.

2. The next question presented is, when must former policy-holders of industrial forms of policies, the weekly premium on which were fifty cents or less, whose policies have lapsed for non-payment of premium after the payment of the number of full annual premiums mentioned in the Acts referred to and whose policies were written when said Acts were in force, make demand for the cash surrender value thereof.

As to the Act of April 5, 1893, the court is of the opinion that where a policy of industrial insurance issued while said Act was in force, has lapsed after the payment of two full annual premiums, the demand for the cash surrender value thereof is controlled by the five-year statute of limitations, for the Act fixes no time within which such demand must be made, the language being that the holder "may claim and recover from the company such surrender value."

As to the Act of July 1, 1893, it is provided therein that application for the paid-up insurance value must be made within eight weeks after the lapsing of the policy for non-payment of premium, and the court is of the opinion that it was the intent of the Legislature that demand for cash surrender value be governed by the same condition as to time, that is, that the demand for cash surrender value should be made within eight weeks after the lapsing of the policy.

It will be seen therefore that there could be, upon policies issued when the Act of July 1, 1893, was in force, no liability upon the part of appellant company for the cash surrender value of industrial policies, the weekly premium on which was not more than fifty cents, unless the demand was made therefor within eight weeks after the lapsing of the policy; but that upon policies issued when the Acts of April 5, 1893 was in effect, that is, between April 5, 1893, and July 1, 1893, there might be liability on the part of appellant company for such cash surrender value of such industrial policies, if demand therefor be not barred by the five-year statute of limitations.

3. If, then, such have a right, whose policies of industrial insurance, on which the weekly premiums were not more than fifty cents, were issued when the Act of April 5, 1893, was in force, and have lapsed for non-payment of premium after the payment of two full an-

nual premiums not more than five years since—to demand and receive the cash surrender value of such policies as in that Act provided, the question is presented whether such right upon the part of such policy-holders would justify the Commissioner of Insurance in making the proposed compilation and investigation.

This court has always been and is now inclined to a broad and liberal construction of the statutes defining the inquisitorial powers and rights of the Commissioner; but those powers must be asserted and acted upon without oppression.

It is alleged in the pleadings that it is the contention of the commissioner that all former policy-holders, whose policies were issued while the Acts mentioned were in force and have been permitted to lapse after the payment of the number of full annual premiums therein provided for, are entitled to the cash surrender value thereof; that the amount of such cash surrender values would probably be seventy-five to one hundred thousand dollars on such policies lapsed in Kentucky. The holding of the court herein that, as to policies issued between July 1, 1893, and June 28, 1902, no liability for the cash surrender value attached unless claim therefor was made within eight weeks after the policy lapsed, will manifestly reduce the probable amount involved to a very small sum, as the only policies that could reasonably be expected to be affected would be those issued between April 5, 1893, and July 1, 1893, and which have lapsed within five years. The probable amount involved, therefore, is unquestionably negligible; at least it is such a sum as could not affect the solvency of the company, the assets of which are conceded by the pleadings to be thirty million dollars in excess of all liabilities, not including any liability on account of the lapsed policies in question herein.

It is shown by the pleadings that while the proposed investigation and compilation has barely gotten under headway the cost has been between three and four thousand dollars, which amount the Commissioner had compelled the appellant company to pay; and that this is only a small proportion of the cost of completing the compilation proposed, which will necessitate the examination of a large mass of records, as the company issued over five million industrial policies in the various states, while said Acts were in force, which have lapsed, and those issued in Kentucky, were not kept in separate rec-

ords from those issued in other States. It will thus be seen that it is proposed by the commissioner to make this investigation and compilation at a large cost to appellant company; that only a small sum is involved; that the amount involved is not only such as could not affect the solvency or financial condition of the company, but is also out of proportion to the expense of the compilation.

The court is of the opinion, therefore, that upon broad grounds of equity, under the facts shown by the pleadings, and under the law as construed herein, the investigation and compilation so proposed to be made and used, is neither necessary nor justified under the powers conferred by law upon the Commissioner of Insurance, and that the chancellor should have granted the relief sought by appellant company, in so far as authorized by the views herein expressed.

Judgment reversed and cause remanded for proceedings consistent with this opinion; the whole court sitting.