## Security Life Insurance Company of America v. Watkins.

(Decided May 25, 1920.)

### Appeal from Daviess Circuit Court.

1. Insurance—Surrender Charge—Reduction of Reserve.—A foreign insurance company cannot under our constitution and statutes enforce a surrender charge provided for in a policy and thus reducing the reserve so as to defeat the policy.

2. Corporations—Foreign Corporations Doing Business in This State. —Under section 159, Kentucky Statutes, and section 202 of Ken-

tucky Constitution, a foreign corporation will not be allowed to do business in the State of Kentucky on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this Commonwealth.

3.  Insurance—Reduction of Insurance Upon Non-payment of Loan.— A clause in a policy of insurance which allows the company to reduce the amount of insurance upon the non-payment of a loan obtained on the policy is not enforceable if it be in the nature of a penalty or forbearance of money, for such is against public policy.

C. W. WELLS and F. W. BULL for appellant.

J. R. HAYS for appellee.

Opinion of the Court by Judge Sampson—Affirming.

The Security Life Insurance Company issued a twenty year policy on the life of Perry A. Watkins, dated April 17, 1912, for $1,000.00. Watkins paid all the premiums from the date of the issual of the policy up to and including April 17, 1916, which carried the policy up to and including April 16, 1917. On April 17, 1917, Watkins was unable to pay the entire premium in cash, but entered into an arrangement with the company whereby he paid $4.87 in cash, and executed two notes of $18.80 each; one due in three months and the other due in six months from that date, in satisfaction of the premium for that year. The first note for $18.80 fell due on July 17, 1917, and was not paid by Watkins. These notes contain the following provision:

"I understand and agree that in consideration hereof, said policy is extended until default is made in payment of this note, when all rights and benefits secured thereby shall cease and determine without notice, and said policy shall be *ipso facto,* null and void, and except as otherwise provided therein. I hereby agree that this note shall not be considered a payment for life insurance, but only for an extension of the time for the payment of the same, and the non-payment of this note when due, and the termination of said insurance by reason thereof, shall not impair the validity of this note, but the same shall become due and payable for the proportion of its face and interest that the time the insurance has been extended for bears to the whole time covered by said premium.

"This note shall be an indebtedness against said policy and be subject to all the terms concerning indebtedness given therein, and I agree that, if the available value of said policy at the date of the non-payment of this note,

when due, be not sufficient to pay the amount of said note and interest, the excess shall at once become due and payable.''

The policy contains these conditions:

''In case any premium should not be paid when due, according to the terms of this contract, then in every such case this policy shall cease and determine, except as otherwise herein especially provided. This contract is based upon the American Experience Table of Mortality and three and one-half per cent interest, and the loan and other values given herein are derived from the reserve computed in accordance with said basis.

''Extended Insurance—Automatic. After this policy shall have been in force for two years, it shall, upon non-payment of a premium when due, be automatically continued in force as non-participating term insurance; provided that, if any indebtedness exist against this policy at the time of such non-payment, the amount of this policy shall be reduced in the ratio of the indebtedness to the then cash value. The period of extension (given in the table for complete policy years up to and including the twentieth) shall be based upon a value of not less than the reserve, at the date of default, on this policy minus two and one-half per cent of the amount of insurance granted by this policy; provided if the said value be more than sufficient to purchase a period of extention for life, the excess shall be accumulated for a cash payment to the insured at the end of the twentieth year from the date of this policy, if he shall then be living.''

Watkins died February 28, 1918, after the default in payment of the premium note on July 17, 1917. The company declined to pay the policy or to allow Mrs. Watkins, the beneficiary, to present proof of the death of the insured, claiming that the policy had lapsed and become null and void ''on non-payment of the first note at maturity,'' meaning the premium note due July 17, 1917. She thereupon brought this suit against the insurance company to recover on the policy subject to a certain loan and other indebtedness which the company held against the policy.

The company filed answer which was later amended and to which demurrer was sustained, and judgment entered for Mrs. Watkins, the beneficiary, for the face of the policy less $121.00, loaned by the company to Watkins, and the sum of $1.51 interest, and the further sum of $37.60, being the balance due upon the last prem-

ium payable on the policy before the death of Watkins. From this judgment the insurance company appeals.

Under its terms the policy had a reserve value at the time it lapsed, of $147.84, which, by section 3 of the policy quoted above, on the non-payment of a premium when due, was to "be automatically" applied to the purchase of non-participating term insurance, or in other words, to the extension of the policy of insurance without allowing the insured to participate in any benefits or dividends otherwise arising under the terms of the policy. Watkins had borrowed $121.00 on the policy and in addition owed the company interest on his loan from April 17th to July 17th, which amounted to a small sum. He also owed the company the premium on the policy between said dates, making his total indebtedness to the company, according to its answer, $128.35, thus leaving a balance in his favor of $19.49. The company contends that this balance in favor of the insured was more than consumed by the surrender charge which it was entitled to make under the terms of the policy above quoted, which provided that the "reserve at the date of the default on the policy minus two and one-half per cent of the amount of insurance granted by the policy" shall be available to purchase extended insurance; and this is correct if the insurance company is entitled to take advantage of the terms of the policy and make a surrender charge, because if we take two and one-half per cent of the face of the policy, $1,000.00, which equals $25.00, from the reserve value of the policy at the time of the default in the payment of the premium note, $147.84, we have only $122.84, which is less than the amount of Watkins' indebtedness to the company at that date, and leaves nothing to keep the policy alive and purchase "extended insurance." Mrs. Watkins, the beneficiary, however, contends that the company is not entitled to enforce its surrender charge of $25.00, and that there was about $19.49 left after deducting the $128.35, which included all the indebtedness of Watkins to the company, with which to carry "extended insurance," and that this sum would more than have paid for the carrying of the policy as a non-participating contract beyond the date of the death of the insured. So one of the questions to be determined is, can an insurance company enforce its surrender charge and thus take from the reserve fund, $25.00, and defeat the extension provision of the policy? If it can, the judgment must be reversed.

It is said in brief of counsel for appellant that section 659, Kentucky Statutes, forbidding an insurance company making a surrender charge applies only to domestic companies, and so the section reads. But this court in the construction of that section and policies of insurance containing provisions for a surrender charge has uniformly held such provision contrary to the statutes and therefore void. In the case of Peak v. Mutual Benefit Life Insurance Co., 172 Ky. 245, in speaking of such a provision in a policy of life insurance, we said: ''The provision in the policy for a surrender charge in the case of either paid up or extended insurance was contrary to the statutes, and therefore void; the appellant was entitled to a settlement under the terms of his policy with this void provision eliminated.'' This statement of the law is sustained by Penn Mutual Life Insurance Co. v. Barnett's Admr., 124 Ky. 266; Prudential Life Insurance Co. v. Ragan, 184 Ky. 359. A foreign insurance company is not entitled to do business in Kentucky on more favorable terms than those enjoyed by domestic corporations. Section 202 of the Constitution reads:

''No corporation organized outside the limits of this state shall be allowed to transact business within the state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this Commonwealth.''

In construing that section we held in the case of Metropolitan Life Insurance Company v. Clay, Commissioner of Insurance, reported in 158 Ky. 192, that a foreign insurance company is not entitled to transact business in this state upon more favorable conditions than domestic corporations organized for the same purpose. Greene, Auditor v. Kentenia Corporation, 175 Ky. 667; National Benefit Insurance Co. v. Clay, Insurance Commissioner, 162 Ky. 409.

It is earnestly insisted by appellant that paragraph 1 of section 3 on the second page of the policy reduces the amount of the policy in the ratio of the indebtedness of the insured to the then cash value of the policy, for that section reads: ''After this policy shall have been in force for two years, it shall, upon non-payment of the premiums when due, be automatically continued in force as non-participating term insurance; provided that if any indebtedness exist against this policy at the time of such non-payment, the amount of this policy shall be reduced in the ratio of the indebtedness to the then cash value. . . . ''

This stipulation is under the black letter heading "Table of Guarantees," and immediately under the large letters constituting the aforesaid words is the further black letter headline, "The accumulations at any year of the guaranteed special cash payment above are not forfeited upon discontinuance of this policy. Full return therefor is contained in the values of this table." The table to which reference is made is printed alongside of section 3, a part of which we have just quoted. This table shows that when two premiums on a policy are paid and default in the payment of a premium is made, the reserve automatically extends the full amount of the insurance for two years and 41 days, and when three premiums have been paid the insurance for the full amount is extended for five years and eighteen days, and when four premiums have been paid the policy is extended eight years and 122 days; and on a payment of the fifth premium, if a default is made in a premium thereafter, the policy is extended eleven years and 106 days. The table shows the length of time that any given number of premiums will carry the policy up to twenty. From this it appears that on the payment of the fourth premium by Watkins his policy at its full face would have automatically carried on for eight years and 122 days without another payment. These premiums were paid in full by Watkins out of his own money and were the only premiums due up to April 17, 1916. When the next premium became due he obtained a loan from the company of $121.00, from which sum the company deducted the premium, $42.47, with interest in advance upon the entire loan, Watkins receiving in actual cash only about $75.00. At the next premium date he paid $4.87 cash and gave notes for the balance. He died February 28, 1918, which was about ten months and 11 days after the default in payment of premiums. If he had not borrowed the $121.00 from the company on this policy but had defaulted on the fifth premium, his policy for the full amount would have been in full force as non-participating term insurance for eight years and 122 days from that date, which would have reached more than seven years beyond the time of his death. It thus appears that in making the loan to Watkins the company not only charged him its regulation interest rate but it provided an additional penalty by reducing the amount of his policy in the ratio of his indebtedness to the cash value of the policy. This provision of the policy is void as against public policy. Emig's Adm. v. Mutual Benefit Ins. Co.,

127 Ky. 594; second opinion, same case, 145 Ky. 660; Mutual Benefit Life Insurance Co. v. Davis, 115 Ky. 404.

This provision of the policy makes a distinction between the policy holders of the company to the great disadvantage of a borrowing member. In the instant case Watkins had a policy of insurance for $1,000.00 fully paid up for eight years and 122 days from the payment of his fourth premium, but when he obtained a loan from the company he was required to make a sacrifice, and submit to the penalty of having the amount of his policy reduced from $1,000.00 to $130.00, according to the contention of the appellant company. This we held could not be done in the opinion of the Emig case, *supra*. In discussing a similar provision in the Emig policy and after pointing out the advanges of a non-borrowing member we said:

"But, if a policy holder happened to be at the same time a borrower from the company, and had defaulted in the payment of a premium, then the company under the contract had the right to deduct the indebtedness out of the cash surrender value and pay the balance in cash, or allow a value in the form of extended or paid up insurance the amount of such value to be applied to the purchase of such insurance being correspondingly reduced in the ratio of the indebtedness to the full cash value. It will thus be seen that the borrowing and the non-borrowing members are not treated alike; that the non-borrower had advantages and privileges that are not allowed the borrowing member."

Continuing we said:

"We are wholly unable to preceive why an insurance company should be allowed to discriminate between its policy holders in this manner or exact indirectly more than legal interest. In lending money to its policy holders an insurance company occupies exactly the same attitude as any other money lender. It is entitled to demand and collect the amount of its debt with 6 per cent interest thereon, and no more. It is true the contract allows it to demand more than this, and the right to require the borrowing member to pay a larger sum than his debt and interest; but this character of contract, no matter how carefully it may be worded, or how skillfully devised, will not be enforced. When the company lends money and takes as security for the loan a policy that amply secures it, there is no reason why it should be allowed privileges or rights not extended to ordinary money lenders. Our laws against usury, and other de-

vices and schemes resorted to by lenders to enable them to charge debtors more than the legal rate of interest, are rigidly enforced and no plan, however ingenious, will be allowed to defeat them."

In remanding the case for a new trial, we said:

"Upon a return of the case, evidence may be taken by both parties, and the court will ascertain and adjudge the full amount that Emig was entitled to on March 20, 1903, and after deducting therefrom the amount of his debt and interest, will compute the period for which the balance due would purchase extended insurance, and if the extended insurance carried the policy beyond the time of Emig's death judgment will be rendered in favor of appellee for the amount of the policy and interest from the time it was due; otherwise the judgment will be for appellant."

With this unconscionable stipulation eliminated from the policy as is also the surrender charge provided for in the same section of the contract—both against public policy—the rights of the beneficiary under the contract are easily determined.

A policy which embraces a clause allowing a surrender charge, or inflicts a burden or penalty for forbearance or use of money over and above the interest rate, in effect provides a penalty against the unfortunate policy holder and such terms are inimitable to our law and contrary to our public policy. In the case of Mutual Benefit Life Insurance Co. v. Davis, *supra*, we said:

"But the appellant claims that the net reserve for three annual premiums amounted to $97.53, which, added to the last dividend of $7.30, makes $104.83, from which it claims that the amount borrowed from it by the insured with 6 per cent interest, amounting to $42.96, should be deducted, leaving $61.87 as the amount of the net reserve, which shows that by his borrowing from appellant he not only is required to pay the sum borrowed, together with 6 per cent interest thereon, but by his failure to pay the sum borrowed, or the payment of his premium, he not only suffered the loss of his 6 per cent interest which he agreed to pay for forbearance, but suffered the loss, by forfeiture or penalty, of several years of extended insurance on his policy previously paid for by him. This amounted to a forfeiture or penalty for the use or forbearance of money, pure and simple, and is against the policy of the laws of the state, and such a contract ought not to be enforced."

When the $25.00 surrender charge is eliminated from the policy before us, we have only the loan of $121.00, and the interest charge of $1.51, and $5.84, the then earned portion of the unpaid premium, making a total of $128.35. The reserve amounts to $147.84. So if we take the total indebtedness of the insured, $128.35, from the reserve, $147.84, we have $19.49 with which to purchase extended insurance, and this amount admittedly would have carried the policy at its full face beyond the date of the death of Watkins, the insured.

From this it follows that the trial court did not err to the prejudice of appellant in sustaining the demurrer to the answer as amended by appellant, nor in entering judgment for the face of the policy, $1,000.00, less the items of indebtedness aforesaid.

Judgment affirmed.