Steuernagel et al., Appellants, *v.* Metropolitan
Life Insurance Co.

Argued April 16, 1936.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Bresci R. P. Leonard,* with him *Lee L. Leonard* and *Paul K. McCormick,* for appellants.

*William S. Rial,* with him *H. E. Marker* and *H. E. Marker, Jr.,* for appellee.

OPINION BY MR. JUSTICE LINN, May 25, 1936:

Plaintiffs, who are the appellants, brought this suit as administrators of John Itzel, deceased, to recover on a policy of life insurance in the sum of $10,000 issued by defendant to Itzel, payable to his estate.

The policy lapsed for nonpayment of premium and the question is how much is payable to the insured's administrators who claim $10,000 with interest.   In its affidavit of defense, defendant sets forth that the amount due is $807.62 with interest, that defendant had tendered that sum in discharge of its obligation but that plaintiffs had refused to receive it.   Plaintiffs moved for judgment for want of a sufficient affidavit of defense.   The motion

was refused. Both sides agree that no facts are in dispute and that questions of law only are presented.

The date of the policy is January 21, 1926. Premiums were paid for 7½ years to and including the second quarterly premium of the 8th policy year, due April 21, 1933. The quarterly premium due July 21, 1933, was not paid. Itzel died August 23, 1933. He had borrowed from defendant on the policy $1,120 which, with interest to July 21, 1933, amounted to $1,121.47; on that date the cash surrender value was $1,220, leaving him credit of $98.53. The mere nonpayment of the premium 33 days after it was due did not forfeit all the benefits to which the insured (and, contingently, his beneficiary) had become entitled by his payments up to and including April 21, 1933. These benefits appear in the provisions of the policy and cover various contingencies agreed upon.

The policy has not been printed, only such part of it as the parties deemed material appears. Provision 9 is entitled "OPTIONS ON SURRENDER OR LAPSE" and is as follows: "After premiums for three full years shall have been paid on this Policy, the Owner hereof or the Assignee of record, if any, upon written request filed with the Company at its Home Office, together with the presentation of this Policy for legal surrender or endorsement within three months after the due date of any premium in default, shall be entitled to one of the following options:

"(a) CASH SURRENDER VALUE—

"To receive the Cash Surrender Value which shall be the Reserve on this Policy (omitting fractions of a dollar per thousand of insurance) and on any outstanding Paid-up Additions at due date of premium in default, less a surrender charge of not more than two and one-half per cent of the amount of insurance under this Policy, except that for the twentieth and subsequent years no surrender charge will be made. The Company shall deduct from such Cash Surrender Value any indebtedness to the Company for which this Policy is security,

the remainder being hereinafter referred to as the 'net sum'; or,

"(b)  PAID-UP WHOLE LIFE INSURANCE—

"To have the Insurance continued in force from the due date of premium in default for a reduced amount of nonparticipating Paid-up Whole Life Insurance, payable at the same time and under the same conditions as this Policy.  Such Paid-up Whole Life Insurance shall be for such an amount as the net sum described under (a) above will purchase (in even dollars) at the then attained age of the insured when applied as a net single premium.  Such Paid-up Whole Life Insurance may be surrendered at any time for its then Cash Surrender Value (viz., its full Reserve at the date of such surrender less any indebtedness to the Company on such Paid-up Whole Life Insurance) ; or,

"(c)  PAID-UP TERM INSURANCE—

"To have the Insurance continued in force from the due date of premium in default as Non-Participating Paid-up Term Insurance.  If there be no indebtedness to the Company for which this Policy is security, the amount of such Paid-up Term Insurance shall be equal to the amount of insurance under this Policy, plus any outstanding Paid-up Additions, and for a term (in years and whole number of months) such as the Cash Surrender Value as defined under (a) above will purchase at the then attained age of the Insured when applied as a net single premium.  If there be any such indebtedness the amount of the Paid-up Term Insurance will be reduced in such proportion as the indebtedness bears to the Cash Surrender Value as defined under (a) above. Such Paid-up Term Insurance may be surrendered at any time for its then Cash Surrender Value (viz., its full Reserve value at the date of surrender).

"In the event of default in the payment of any premium, after premiums for three full years shall have been paid on this Policy, if the Owner or the Assignee of record, if any, shall not avail himself of one of the

foregoing options, in the manner hereinbefore provided, within three months after the due date of the premium in default, this Policy will be continued, by the Company, for a reduced amount of nonparticipating Paid-up Whole Life Insurance, as provided under Option (b) above.

"The Company, at its discretion, may defer the payment of any Cash Surrender Value under Options (a), (b) or (c) as above for a period not exceeding ninety days after the application therefor is received by the Company.

"The Reserve held for this policy and for any Paid-up Additions and the Net Single Premiums mentioned above, shall be computed upon the Metropolitan Intermediate Table of Mortality (as adopted by the Insurance Department of the State of New York) with interest at three and one-half per centum per annum."

It is not necessary to consider what is meant by "Owner" of the policy; defendant in its affidavit of defense, concedes that the plaintiffs are entitled to claim any benefit that Itzel might have claimed. No request was made by Itzel or by the plaintiffs within three months as specified in the provision quoted. Under the "Cash Surrender Value" provision the "net sum" demandable was $98.53. As we understand the parties, it is agreed that under the "Paid-up Whole Life Insurance" provision, the amount of the insurance of that character which Itzel could have demanded would have been $181. The parties differ about the meaning of the rest of the provision quoted above, (c), particularly the provision "To have the Insurance continued in force from the due date of premium in default as Non-Participating Paid-up Term Insurance."

Briefly, the appellants claim, that under that provision they are entitled to treat the policy in force in the sum of $10,000 as such paid-up term insurance for the term of 284 days and, as Itzel died within 284 days of the date when the premium was due, they are entitled to the full amount.

On the other hand, under that provision, the defendant states the amount of the paid-up term insurance to be $807.62 for a term of 6 years, 9 months and 15 days.

The plaintiffs attempt to reach their conclusion by two steps; first, they contend that the provision is ambiguous, and, second, having asserted ambiguity, they apply the rule by which ambiguous provisions are construed in favor of the insured and against the insurer; they also present a subsidiary contention to the effect that any other construction would be discriminatory. We all agree that there is no ambiguity, no discrimination and no difficulty in the construction of the policy. Provision 4 is entitled "Entire Contract" and provides "This Policy and the application therefor constitute the entire contract between the parties. . . ."

The policy provides, as has been seen, for a cash surrender value. It also provides for loans on the policy after a specified period, and that the proportion between the loans with interest and the cash surrender value shall constitute the controlling factor in determining the amount of the paid-up term insurance to which Itzel would have been entitled if he had applied pursuant to provision (c). The defendant concedes that the plaintiffs are entitled to payment under any form of liability that Itzel would have been entitled to elect if he had exercised any of the granted options, but insists that they cannot receive any greater benefit than Itzel himself had provided for. To that contention plaintiffs say that they have a fourth option; that there is no provision in the policy specifically providing what shall be done, if, without an election, the insured dies within the three-months' period in which he might have elected, and that they, therefore, are now entitled to call on defendant to discharge its policy obligation by paying the face amount of the policy. They say that the policy made no provision for death without election in the three-months' period, and therefore is ambiguous. The contention must be rejected as excluded by the agreement of the parties.

The policy specifically provides, as appears above, that it and the application constitute the entire contract. The plaintiffs must claim through the insured on the contract; when it lapsed, he had specified options to the exercise of which, defendant agrees, they succeeded and one of which they may select as the basis on which defendant must discharge its obligation. As the parties made provision for the contingencies specified, and provided that it was the entire contract, no other obligation was imposed on or assumed by defendant. We know of no additional obligation imposed by the law and must therefore interpret the contract as the parties themselves made it.

There is no ambiguity in provision (c) for "Paid-up Term Insurance." The second sentence deals with the paid-up term insurance which must be furnished "If there be no indebtedness to the Company for which this Policy is security"; in that event the amount "shall be equal to the amount of insurance under this Policy [$10,000] plus any outstanding Paid-up Additions, and for a term in years and whole numbers of months such as the Cash Surrender Value as defined under (a) above will purchase at the then attained age of the insured when applied as a single net premium." The next sentence provides what paid-up term insurance shall be issued if there be such indebtedness: "If there be any such indebtedness the amount of the Paid-up Term Insurance will be reduced in such proportion as the indebtedness bears to the Cash Surrender Value as defined under (a) above." As Itzel was indebted in the sum of $1,121.47, the manner in which that factor operates in determining the paid-up term insurance must be considered. The provision is that "the amount of the Paid-up Term Insurance will be reduced in such proportion as the indebtedness bears to the Cash Surrender Value as defined. . . ." This proportion is as $1,121.47 is to $1,-220 or, in percentage, 91.928%; applying this percentage to the $10,000 face of the policy, for the purpose of

reducing "the amount of Paid-up Term Insurance" "in such proportion as the indebtedness bears to the Cash Surrender Value," makes the amount of the paid-up term insurance which Itzel could have demanded $807.62; his estate can receive no more than he could have demanded. The plaintiffs contend that they may claim the full amount, $10,000, by reducing the term in the proportion specified, which, as has been stated, would furnish insurance in the sum of $10,000 for a term of 284 days, as plaintiffs calculate the term. This is not an admissible construction because the provision is "the amount of the Paid-up Term Insurance will be reduced," not that the term will be reduced in the proportion stated; plaintiffs must stand on the contract made by the insured. The plaintiffs have found no decision of this court to support their construction. *Jeske v. Metropolitan Life Ins. Co.,* 113 Pa. Superior Ct. 118, 172 A. 172, is relied on. The provisions of the policies in that case and in this are different but if, as appellants contend, expressions in the opinion of the learned Superior Court lend support to plaintiffs' contention, we must disapprove of them to the extent that they are inconsistent with what we now decide.

Appellants' argument suggests that the provision for reduction in amount of the insurance payable under (c) is against public policy as enabling defendant to receive more for the loan than the legal rate of interest; that this alleged additional "burden," which the insured agreed to assume, is void: cf. *Security Life Ins. Co. of America v. Watkins,* 189 Ky. 20, 224 S. W. 462. But plaintiffs' suit is based on the right to insurance in the full amount of the policy for a reduced term (for which the policy does not provide) which is, itself, an admission that the term of the insurance may be decreased, or that some additional "burden" may be added. The loan imposes no additional obligation; he had agreed to repay it with interest. He had accepted a policy containing options or proposals, which he might accept or not,

by which, in the contingency stated, he might have protection in a less amount for the term; the contract did not provide that he might select the full amount for a shorter term. For loans made against the reserve, it was agreed that if a new policy is demanded pursuant to the option, the loans must be credited against the reserve before the insurance purchasing power may be ascertained; the loan must be repaid before the new protection is purchased. No new burden is added; the parties have simply provided for payment of the loans which have lessened the purchasing power of insurance. The insured cannot expect to buy the full protection granted nonborrowers where he has agreed that the loans must be accounted for before the amount of his new protection may be determined. This is not inconsistent with the statute.

The Act of 1921, P. L. 682, article IV, section 410 (i), 40 PS section 510 (i), provides that a policy shall contain a "provision which, in event of default in premium payments after premiums shall have been paid for three years, shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy and on any dividend additions thereto specifying the mortality table and rate of interest adopted for computing such reserves, less a sum not more than two and one-half per centum of the amount insured by the policy and of any existing dividend additions thereto, and less any existing indebtedness to the company on the policy." Under that provision the "net value" may be decreased when a loan exists. The provision (c) secured "to the owner of the policy" (in the words of the statute) "a stipulated form of insurance," that is, "If there be any such indebtedness the amount of the Paid-up Term Insurance will be reduced in such proportion as the indebtedness bears to the Cash Surrender Value as defined under (a) above."

The appellants cite decisions from other jurisdictions said to support positions taken in their argument. Of them, it may be said generally that they are not persuasive; the terms of the policies are essentially different from those before us and, in several instances, applicable statutes differ from ours.* On the other hand, appellee cites decisions, some of which are persuasive. In *Neal v. Columbian Mutual Life Assur. Soc.*, 161 Miss. 814, 138 So. 353, the policy contained a provision like that in the present policy. The court concluded as we have. As the court dealt with the contention, also made by appellants, that discrimination against borrowing policyholders would result from the adoption of the view which prevailed, we quote the following: "In the provisions of the covenant of insurance and loan agreement, there is no discrimination against borrowing covenant holders. The covenant holders who permitted the accumulated reserve or cash value to remain intact are, upon the lapse of the covenant, entitled to extended insurance for the full amount of the face of the covenant; and the fact that those who withdraw all, or a part of this cash value by way of a loan, which by contract between the parties becomes due and payable immediately upon the lapse of the covenant of insurance, are entitled only to the amount of extended insurance which the available net cash value will purchase, is not a discrimination against such policyholders. In each case the holder of the covenant receives exactly the benefit for which he pays." There may of course not be discrimination between policyholders of the same class: See Act of June 23, 1931, P. L. 904, section 2, P. L. 912, 40 PS section 477a, but the insured in this case was in the same class with all other borrowing policyholders; he was not in the class of nonborrowers; there is nothing to indicate that he was accorded different treatment than other bor-

---

* For example, see *Gooch v. Metropolitan Life Ins. Co.*, 333 Mo. 191, 61 S. W. (2d) 704.

rowers. By borrowing, he selected the class. Having entered that class he cannot demand settlement on the basis by which members of another class—nonborrowing members—would be entitled, because he took himself out of that class. In *Pilot Life Ins. Co. v. Owen,* 31 F. (2d) 862, (C. C. A.), the court dealt with a similar provision, saying: "We are satisfied that both of these contentions are unsound. As to the first, it is sufficient to say that the policy expressly provides that 'the amount of extended term insurance . . . shall be reduced in the proportion such indebtedness bears to the full cash surrender value, and to say that the word 'amount' thus used refers to time and not to money would be to torture the very language of the provision itself. There is no ambiguity in the language. . . . The method of calculation here adopted is consistent with that in *Dwyer v. Metropolitan Life Ins. Co.,* 139 S. Car. 377, 137 S. E. 347, and is also entirely consistent with the decision of this court in *Pacific Mutual Life Ins. Co. v. Davin,* 5 F. (2d) 481, (C. C. A.). See also *Fed. Life Ins. Co. v. Kemp,* 257 F. 265 (C. C. A.)." See also *Columbian Mutual Life Ins. Co. v. Vassar,* 230 Ala. 284, 160 So. 696; *Rustin v. Ætna Life Ins. Co.,* 98 Neb. 426, 153 N. W. 548; *Mills v. Nat. Life Ins. Co.,* 136 Tenn. 350, 189 S. W. 691; *Schoonover v. Prudential Ins. Co.,* 187 Minn. 343, 245 N. W. 476.

The order appealed from is reversed; the record is remitted with instructions to enter judgment for the plaintiffs for the sum of $807.62 with interest unless, in the words of the Act of April 18, 1874, P. L. 64, section 2, 12 PS section 1098, "other legal or equitable cause be shown to the court below why such judgment should not be so entered."