## Kramer, Appellant, *v.* Mutual Life Insurance Company of New York.

Argued November 19, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Arthur S. Arnold,* with him *Harry Norman Ball,* for appellant.

*Charles I. Thompson,* with him *Ballard, Spahr, Andrews & Ingersoll,* for appellee.

Opinion by Baldrige, J., January 27, 1938:

The plaintiff, as beneficiary in a life insurance policy issued by the defendant company, March 24, 1925, on the life of her husband, brought this suit to recover the sum of $2,000, the face amount of the policy, and interest. The case was previously in this court (see 116 Pa. Superior Ct. 572, 176 A. 744). We there sustained an appeal from a judgment entered for the defendant for want of a sufficient reply by plaintiff to new matter set up in the affidavit of defense.

The question now involved is whether this policy of insurance was in force at the date the insured died. The trial was had before Judge (now Justice) Stern, who held that it was not. We are all of the opinion that his conclusion was right.

The annual premium of $96 included the sum of $8.42, separately mentioned as an additional premium, payable for thirteen years, for total and permanent disability benefits. The company's actuary testified that also $2 of the total premium was applied towards a double indemnity accident provision, leaving the sum of $85.58 as the actual premium for the life insurance feature of the policy.

On January 19, 1933, after the policy had been in effect nearly eight years, the insured borrowed the sum of $345 from the appellee upon the security of the policy. As the insured failed to pay the annual premium due March 24, 1933, or within the period of grace, the policy lapsed. In the event of a surrender or lapse of the policy, the insured had three options after three full premiums had been paid, viz:

"(a) to surrender this Policy for its cash value less any indebtedness to the Company hereon (this balance is hereinafter referred to as the net cash value); or,

"(b) to have the insurance continued in force from the date of such default as paid-up non-participating term insurance without Disability or Double Indemnity Benefits, for an amount equal to the face amount of this Policy and any outstanding dividend additions less any indebtedness to the Company hereon; or,

"(c) to surrender this Policy for paid-up non-participating life insurance without Disability or Double Indemnity Benefits, payable at the same time and on the same conditions as this Policy."

The insured died March 12, 1934, three and a half months after the policy had lapsed, without having exercised any of the three options.

The policy further provided:

"The cash value under option (a) will be the reserve for the face amount of this Policy and for any dividend additions hereto together with any dividend deposits to the credit hereof, less a surrender charge which, in no case, shall be more than one and one-half per centum of the face amount of this Policy; after premiums have been paid for ten full years or more, there shall be no surrender charge.

"The term for which the insurance will be continued under option (b) ...... will be such as the net cash value obtainable under option (a) will purchase at the attained age of the Insured at date of default when applied as a net single premium.

"In the event of default in payment of premium, if this Policy shall not, within three months after such default, have been surrendered to the Company at its Home Office for its cash value as provided in option (a) ...... the insurance will be automatically continued as provided in option (b)."

There was also this further provision:

"The reserve held for the face amount of this Policy and for any dividend additions hereto and the reserves and the net single premiums mentioned herein shall be

computed in accordance with the American Experience Table of Mortality assuming interest at the rate of three per centum per annum."

This was in accordance with section 410 (i) of the Act of May 17, 1921, P. L. 682, art. IV (40 PS §510), which provides that every life insurance policy must specify the mortality table adopted for computing reserves.

In accordance with these provisions, the company continued the policy in force as a paid-up non-participating term policy for the sum of $1,684 for 253 days, or until December 2, 1933, determined in the following manner: There was added to the $2,000, the face amount of the policy, a dividend of $19.40 declared on March 24, 1933, which the insured had failed to claim or apply under any of the options respecting dividends. The dividend was, therefore, applied to the purchase of paid-up insurance, amounting to $32, which, added to the face of the policy, made a total insurance of $2,032. The loan of $345, plus $3.63 interest, making a total of $348.63, was deducted, leaving a balance of $1,683.87.

The period of 253 days was determined by ascertaining the net cash value obtainable under option (a). Under the "Table of Surrender and Loan Values," set forth in the contract, the policy, when eight years old, had a cash value of $175.11 for each $1,000 of insurance. It had, therefore, a cash value of twice that amount, viz: $350.22. That figure coincided with actuarial calculations. A mathematical computation based upon the stipulated table produced a reserve of $360.22. Under our insurance laws, the company could have provided in the contract for a deduction of a surrender charge of 2½ per cent of the face amount of the policy. In this case, although the contract stipulated 1½ per cent, only ½ per cent, or $10, was deducted, leaving a balance of $350.22. Adding thereto a dividend of $19.40 produced a total sum of $369.62 as the cash value of the policy before deduction of the loan and interest, which,

as we have seen, amounted to $348.63, leaving a net cash value of $20.99, which purchased non-participating term insurance in the sum of $1,683.37 for 253 days. The amount of the policy and the period it was continued in force were the same to which any holder of a $2,000 life policy, without disability benefits, was entitled.

The appellant does not question the accuracy of the above figures, but contended in the court below, as she does here, that in calculating the reserve and net cash value there was excluded from the reserve part of the premium of $8.42 charged for the disability provisions, properly applicable thereto. If that amount should have been included in the reserve, concededly, the insurance was extended 353 days, or beyond the death of the insured.

The sole question of fact submitted to the jury was whether the insured failed to pay the premium due March 24, 1933. The jury found that he had, and a verdict was rendered for defendant. We find no error in thus limiting the factual issues.

The only witness called by the plaintiff was an accountant, who testified that the reserve arising from the disability features, calculated upon an actuarial table, designated as Hunter's table, would amount to such a sum at the end of the eighth year, which, if included in the reserve applicable to life insurance, would have extended the insurance beyond the insured's death. An objection to his testimony was sustained by the trial judge, as the table to which he was testifying had not been properly proven. The witness conceded that he did not know, and it was not otherwise shown, that this table had any applicability to this policy. The evidence, therefore, was very properly excluded. In any event, it had no material bearing, in view of our construction of the Act of 1921 and the terms of the policy.

The appellant's major contention is that, under sec-

tion 410 (i) of the Insurance Act of 1921,[1] supra, she cannot be deprived in the purchase of extended insurance of the disability reserve, as it guaranteed to the insured a net value which "shall be at least equal to the reserve at the date of default on the policy and on any dividend additions thereto;" that the term "reserve," as used therein, means the total reserve on the entire policy and not merely the reserve created by the portion of the premium applied to the life insurance feature of the policy.

The difficulty with this position is that article IV of the Act of 1921 is entitled "Life Insurance." Section 410, included therein, relates only to life, not disability, insurance, and provides in the very beginning that "No policy of life or endowment insurance" shall be issued unless it shall secure to the insured, in the event of a lapse, other life insurance "equal to the reserve at the date of default on the policy and on any dividend additions thereto ...... less any existing indebtedness to the company on the policy." Sub-section (c) provides that the policy shall contain a clause that it shall be

---

[1] "(i) A provision which, in event of default in premium payments after premiums shall have been paid for three years, shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy and on any dividend additions thereto specifying the mortality table and rate of interest adopted for computing such reserves, less a sum not more than two and one-half per centum of the amount insured by the policy and of any existing dividend additions thereto, and less any existing indebtedness to the company on the policy. Such provision shall stipulate that the policy may be surrendered to the company, at its home office, within one month from date of default, for a specified cash value at least equal to the sum which would otherwise be available for the purchase of insurance as aforesaid, and may stipulate that the company may defer payment for not more than six (6) months after the application therefor is made. This provision shall not be required in term insurance of twenty years or less."

incontestable after it has been in force two years. This clause has no application to disability provisions in a policy. Sub-section (1) provides that settlement shall be made upon receipt of due proof of death. Obviously, this sub-section, likewise, has no relation to disability benefits. Nothing whatever is said in the entire section about either accident or disability benefits. They evidently were not in the legislative minds.

If we accept appellant's contention, this statute renders the terms of the contract void, and the agreed table of cash values as set forth therein must be entirely disregarded. None of the terms of this policy are repugnant to any of our insurance laws; they are in entire conformity therewith. The parties made their own contract, in a form which has been approved and recognized by our courts as valid. The language used therein is clear and must be construed to mean just what it says: *Steuernagel et al. v. Metropolitan Life Ins. Co.,* 322 Pa. 289, 185 A. 208; *Felderman, Trustee, et al. v. Inter-Southern Life Ins. Co.,* 325 Pa. 389, 190 A. 723.

The insured, when he entered into his contract, agreed to the precise cash value at the end of eight years, and the amount of the reserve was computed in accordance with the American Experience Table of Mortality, just as provided in the policy. The statute relied upon by appellant secures to the insured the benefit of the excess he has paid over the actual cost of life insurance, computed upon the basis of certain mortality tables. Disability premium is not based upon mortality tables, but upon actuarial tables, which, however, according to the company's actuary, have not proven satisfactory as many large companies have suffered losses on this class of business.

Generally, the word "reserve" may apply to a variety of situations. There are catastrophe, loss, unearned premium, etc., reserves. See Webster's New Interna-

tional Dictionary; 32 C. J. 1017. As applied to life insurance policies, it has a well-known significance.

In *Williams v. Union Central Life Ins. Co.*, 291 U. S. 170, 176, 54 S. Ct. 340, the court, in defining "surrender value" and "reserve," said:

"The dividend is not a part of the 'surrender value.' That value is equal to the 'reserve' at the end of the policy year less the 'surrender charges' stated. Where level premiums are paid, the amount of the annual premiums is necessarily greater than the mortality cost during the early years of the insurance and less than the mortality cost in later years. With the mortality table and an assumed rate of interest on the investment of premiums received, the amount of accumulated savings on this basis, at any date, can be mathematically computed. This amount constitutes the 'reserve,' against the policy or its net value. The insurer must have on hand the aggregate amount of these reserves against its outstanding policies. And in case of lapse, after a policy has been in force for a specified time, its net value of 'surrender value' less surrender charges is made available to the policyholder."

There is no indication in the Act of 1921 that the reserve referred to is any other than that carried against the life insurance feature of the policy. The methods prescribed in that act for the calculating of reserve have been followed and the insured has received full benefit of all rights granted under the policy. Furthermore, it does not follow that, even if plaintiff could claim the disability reserve, it must apply to the purchase of extended life insurance.

In *Moss et al. v. Aetna Life Ins. Co.*, 73 F. (2d) 339, 342, involving a policy written under the Tennessee life insurance statute, similar to section 410 of our Act of 1921, it was held that the tables in a life insurance policy are binding on the parties, and that the reserve fund built up for double indemnity could not be

used to increase the term of extended life insurance after the lapse for non-payment of premiums. In the course of the opinion, the court said:

"Nor do we find any different answer to the contention that the tabluated reserve value should be increased by some proportion of the premiums collected to provide for the double indemnity provision of the policies. The reserve values set up at the end of each policy year are specific. There is no provision in the contract that the insured is entitled to any other or greater reserve value. That it was the practice of the company to build up a general reserve to cover that period which intervened between the insured's fulfillment of his contract and the age limit beyond which double indemnity protection was not afforded cannot change the terms of the policy."

If a reserve for double indemnity need not be added to the reserve set up for life insurance risk assumed, it would seem to follow that a reserve for disability insurance need not be added.

The appellant, in support of her contentions that the insurance contract was an entire one, that the total premium was applicable to reserve to carry extended insurance, and that the disability and life insurance features cannot be treated separately for any purpose, including the setting up and application of reserves, cites *Rubin v. Metropolitan Life Ins. Co.*, 296 N. Y. S. 908, which followed *Rhine v. New York Life Ins. Co.* (N. Y.), 6 N. E. (2d) 74, 108 A. L. R. 1197.

In the Rhine Case, the issue was whether a mutual life insurance company had equitably apportioned, as required by the provisions of the Insurance Law of New York (Consol. Laws, c. 28, sec. 83), its distributable surplus among its policyholders, or had made an unlawful discrimination in paying a smaller dividend on policies providing for life insurance and disability benefits than on other similar policies providing only for

life insurance. The parties agreed to a statement of facts, which sets forth that the aggregate premiums received by the company and the interest earned on its investments create one general fund from which are paid the death and disability claims, endowments, surrender values and other claims. The net reserves constitute a surplus to which policy holders of the company are entitled by the terms of their policies. The majority opinion of the court of appeals upheld a distribution giving a lesser amount of dividend to the policyholders whose policies contained disability features, as the company had sustained large losses on that type of policy. A strong dissenting opinion was filed by CRANE, C. J., concurred in by FINCH, J.

We agree with the trial judge that section 410 of the Act of 1921, supra, has no application to disability insurance, and that defendant did not, and was not required by sub-section (i) to, include, in computation of the cash surrender value of this policy, any reserve except life insurance reserve.

Judgment affirmed.