## Statutory Nonforfeiture Benefits of Insurance Policies

788

DAVID STAHL, Attorney General, and J. SHANE CREAMER, Deputy Attorney General, September 13, 1961.—You have requested our advice as to whether life or endowment insurance policies, and industrial life or industrial endowment insurance policies, issued or delivered in the Commonwealth prior to the operative date [1] of the Act of May 1, 1945, P. L. 334, sec. 2, 40 PS §510.1, known as the Standard Non-Forfeiture Law, have any statutory nonforfeiture values [2] or benefits on default in premium payments when pre-

---

[1] "After the effective date of this act, any company may file with the Insurance Commissioner a written notice of its election to comply with the provisions of this section after a specified date. After the filing of such notice, then upon such specified date (which shall be the operative date for such company), this section shall become operative with respect to the policies and contracts thereafter issued by such company: Provided, however, That the operative date for every life insurance company, except a limited life insurance company, shall not in any event be later than January first, nineteen hundred and forty-eight." (section 410A(6)(g) of The Insurance Company Law of May 17, 1921, as added by the Act of May 1, 1945, P. L. 334, section 2, 40 PS §510.1(g)).

[2] "Nonforfeiture values" deal with policy contract values, that is, the contractual rights of policyholders to values under their policies in event of premium default or surrender of the policy. Policy contract values are established by "reserve" valuation.

miums have been paid for a period of at least three years. It is our opinion that such policies do have certain statutory nonforfeiture values or benefits.

## Life and Endowment Insurance

Historically, it is significant that one of the earliest voluntary steps taken by the insurance industry in the liberalization of life insurance contracts was the granting of some form of nonforfeiture benefits, even though not provided by the policy.[3] Once introduced, this voluntary action by insurance companies led to the inclusion by some companies of a policy provision specifying certain rights of the policyholder in default of premium payments. In 1861, Elizur Wright, First Insurance Commissioner of Massachusetts, succeeded in enacting a law [4] requiring nonforfeiture provisions in certain cases and set the legislative pattern that was

---

[3] Prior to 1831, the Rules of the Pennsylvania Company for Insurance on Lives and Granting Annuities provided for repurchase of its insurance policies at a "fair price." First annual report of Mutual Life of New York in 1844 stated that "Equitable consideration will be given on surrender of its policies."

[4] Acts and Resolutions of Massachusetts, 1861, chapter 186, approved April 10, 1861, Section 1:

"No policy of insurance on life, hereafter issued by any company chartered by authority of this Commonwealth, shall be forfeited or become void by the nonpayment of premium thereon, any further than regards the right of the party insured therein to have it continued in force beyond a certain period, to be determined as follows, to wit: the net value of the policy, when the premium becomes due and is not paid, shall be ascertained, according to the 'combined experience' or 'actuaries' rate of mortality with interest at 4% per annum after deducting from such net value any indebtedness to the company or notes held by the company against the assurer, which notes if given for premium shall then be cancelled, four-fifths of what remains shall be considered as a net single premium of temporary insurance, and the term for which it will insure shall be determined according to the age of the party at the time of the lapse of premium, and the assumption of mortality and interest aforesaid."

to echo throughout the United States. Following this early Massachusetts statute, practically all companies, whether or not subject to that law, adopted definite forms of nonforfeiture benefits.

In 1879, New York enacted its first nonforfeiture statute,[5] and around the turn of the century the concept of a "cash surrender value," payable on default, emerged. Pennsylvania first took statutory action in 1911 [6] and it was then that the policyholders received substantial statutory nonforfeiture protection.

The nonforfeiture concept in life insurance law grew proportionately as the insurance companies developed by experience.

Modern life insurance commenced with the British Equitable Company in 1762, when that company started to vary the premium by age at issue under the influence of Halley's first scientific mortality tables. Until 1901, the insurance industry in this country used the mortality basis of the Actuaries' Table, derived from the experience of life insurance companies in Great Britain. In 1901, America placed its mortality structure on the basis of the experience derived on this continent adopting the American Experience Table of Mortality. As the scientific knowledge of the actuaries [7] became more precise and exact in this gradual process of development, and as sound theoretical standards were evolved, it became clear that the policyholder was

---

[5] Laws of New York, 1879, chapter 347, approved May 21, 1879. This act provided that in the event of default in premium payments, if the policy had been in effect for three full years the policyholder would be entitled to a paid-up insurance policy equivalent to the reserve on such policy.

[6] The Act of June 1, 1911, P. L. 581, sec. 25, Ninth.

[7] Actuarial advances in 1901, 1941 and 1958 were especially significant since "reserve" valuations were radically altered, thus effecting equivalent changes in "policy contract values" or nonforfeiture benefits.

establishing an equity in his policy by his level premium payments.[8]

Pennsylvania then, by 1911, had recognized the vital need to protect policyholders with regard to nonforfeiture benefits. The General Assembly in that year enacted legislation[9] making it mandatory for life in-

---

[8] In the level insurance premium system of life insurance the net level premium must be higher than the monetary value of annual risk during the early policy years and the excess must be accumulated with interest to provide funds for payment of claims after the age is reached where the value of the annual risk exceeds the net level premium in the annual premium being paid. It was the accumulation of these funds that made the nonforfeiture concepts a reality. On surrender of a policy, the insurer, being relieved of the obligation to provide death benefits during future years where the annual value of the risk exceeds the annual net level premium, no longer needed to retain the surrendering policyholder's contributions through the funds previously accumulated for such purposes. Since the surrendering policyholder made a contribution to these funds during the period from date of issue to the date of surrender, he was equitably entitled to the pro rata share of the funds actually accumulated from the premiums paid by his group of policyholders and no longer needed to assure solvency of the company for the protection of continuing policyholders.

[9] The Act of June 1, 1911, P. L. 581, sec. 25, Ninth:

"A provision which, in event of default in premium payments after premiums shall have been paid for three years, shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy and on any dividend additions thereto, specifying the mortality table and rate of interest adopted for computing such reserves, less a sum not more than two and one-half per centum of the amount insured by the policy and of any existing dividend additions thereto, and less any existing indebtedness to the company on the policy. Such provision shall stipulate that the policy may be surrendered to the company at its home office, within one month from date of default, for a specified cash value at least equal to the sum which would otherwise be available for the purchase of insurance as aforesaid, and may stipulate that the company may defer payment for not more than six (6) months after the application therefor is made. This

surance policies [10] issued or delivered in the Commonwealth after the effective date of the act to contain a provision [11] which, in the event of default in premium payments, after premiums had been paid for three years, granted to the insured "a stipulated form of insurance" or "a specified cash value" equivalent in value to the reserve at the date of default less certain authorized deductions. Consequently, this act established statutory nonforfeiture protection for the policyholders in Pennsylvania, assuring them of two specific nonforfeiture benefits: "stipulated form of insurance" and "specified cash value." Pennsylvania's early statutory language, although not the standard nonforfeiture terminology later adopted by the insurance industry, was equated to the standard industry phrases of "paid-up insurance" and "cash surrender value" by the Supreme Court of Pennsylvania.[12]

---

provision shall not be required in term insurance of twenty years or less."

[10] Article 1, sec. 103, of the Act of May 17, 1921, P. L. 682, 40 PS §363, entitled "Scope of Act," establishes the type or class of insurer to whom "The Insurance Company Law of May 17, 1921" applies. It is clear that stock life companies, mutual life companies, limited stock life companies, and limited mutual life companies are required to comply with the nonforfeiture provisions of The Insurance Company Law of May 17, 1921.

[11] All life and endowment insurance except policies of industrial insurance where the premiums were payable monthly or oftener and term policies of 20 years or less were required to contain these statutory nonforfeiture provisions: Section 25, Act of June 1, 1911, P. L. 581; section 410, Act of May 17, 1921, P. L. 682, 40 PS §510. Annuities and pure endowment contracts are required to contain the statutory nonforfeiture provisions set forth in section 410B of the Act of May 17, 1921, P. L. 682, 40 PS §510A (f). Group life insurance policies, other than term policies, are required to contain the statutory nonforfeiture benefit as provided in section 6 of the Act of May 11, 1949, P. L. 1210, 40 PS §532.6.

[12] Steuernagel v. Metropolitan Life Insurance Co., 322 Pa. 289, 185 Atl. 208, (1936).

In Felderman v. Inter-Southern Life Insurance Company, 25 D. & C. 187 (1935), the court held that under this act a policy of life insurance issued in Pennsylvania had to contain these nonforfeiture provisions.

In 1921, this same statutory nonforfeiture provision, that was contained in the Act of June 1, 1911, P. L. 581, was reenacted by the General Assembly in identical language in The Insurance Company Law of May 17, 1921.[13] Consequently, Pennsylvania has had specific statutory nonforfeiture requirements from 1911 to the present time.

With regard to nonforfeiture benefits in the case of policies of life and endowment insurance issued or delivered before the operative date of the Pennsylvania Standard Non-Forfeiture Law, the General Assembly directed by specific language that the nonforfeiture provisions of The Insurance Company Law of 1921,[14] would apply.

In 1945, Pennsylvania, following the national trend, promulgated the Standard Non-Forfeiture Law.[15] The statutory changes with regard to nonforfeiture were substantial and were brought about by the study and report of the Guertin Committee of Actuaries appointed by the State Insurance Commissioners in 1937. Coincidentally, the actuarial basis of the insurance industry was radically altered by the promulgation of the new commissioners in 1941 Standard Ordinary

---

[13] The Act of May 17, 1921, P. L. 682, article IV, section 410 (i). See footnote 9, supra.

[14] Act of May 1, 1945, P. L. 334, sec. 1, 40 PS §510 (i) (1) :
*"In the case of any policy issued prior to the operative date of section four hundred and ten A of this act (the Standard Nonforfeiture Law), . . ."* a nonforfeiture benefit shall be provided (as under existing law pursuant to Act of May 17, 1921, P. L. 682, section 410 (i) (1) ). (Italics supplied)

[15] Act of May 1, 1945, P. L. 334, section 2.

Mortality Table. These changes reached the mathematical foundations of the insurance industry, and necessitated the use of voluminous actuarial tables containing over two million calculated values, completely revised policy form, new manuals of rates and values, and new scales of gross premiums, dividends and guaranteed values. The objectives [16] of the new standard nonforfeiture laws had been crystallized by National Association of Insurance Commissioners, and over the years the new laws provided greater equity, a sound theoretical approach and clarification of the true basis of nonforfeiture benefits.

It is perfectly clear, therefore, that section 410 (i) (1) of The Insurance Company Law of May 17, 1921, P. L. 682, granting specific statutory nonforfeiture benefits, applies to all contracts of life and endowment insurance issued and delivered in the Commonwealth subsequent to January 1, 1912, but prior to the operative date of the Standard Non-Forfeiture Law of May 1, 1945.

### Industrial Life and Industrial Endowment Insurance

Until 1937, in Pennsylvania there was no distinction between life insurance and industrial life insurance, or endowment insurance and industrial endowment insurance. In that year the General Assembly amended [17] the Act of May 17, 1921, P. L. 682, The Insurance Company Law of 1921, 40 PS §341 et seq., and de-

---

[16] (a) To bring into use the new commissioners 1941 Standard Ordinary Mortality Table known as the CSO table.

(b) To distinguish policy equities from company valuation liabilities.

(c) To abolish the concept of surrender charge.

(d) To provide an improved modified net premium valuation method.

[17] Act of May 21, 1937, P. L. 769.

fined industrial life and industrial endowment insurance and prescribed certain requisite provisions for such industrial insurance issued after January 1, 1938. This amending act added a new section, section 420C, entitled Uniform Industrial Policy Provisions, and set forth in subparagraph (f) certain new mandatory provisions concerning default in premium payments in industrial life or industrial endowment insurance.

Prior to January 1, 1938, all industrial life and industrial endowment insurance policies were governed by the general provisions of The Insurance Company Law of May 17, 1921, P. L. 682,[18] and in particular were governed by the nonforfeiture provisions of section 410 (i) (1) of that act. After January 1, 1938, industrial life and industrial endowment policies had statutory nonforfeiture benefits, as provided in section 420C(f) of The Insurance Company Law, which was added by the Act of May 21, 1937, P. L. 769.

## Conclusion

Accordingly, it is our opinion, and you are advised:

(1) That all life and endowment policies [19] issued

---

[18] "The Act of 1937 P. L. 769 amended The Insurance Company Law of 1921 P. L. 682, so as to define industrial insurance and to prescribe uniform and prohibited industrial policy provisions. This statute, however, merely imposes certain additional restrictions upon the issuance of industrial insurance policies, and may not be taken as an indication that the other provisions of the Insurance Company Law are not applicable to industrial insurance companies. We think the fact that these restrictions were imposed by an amendment to the Insurance Company Law, rather than by a separate statute, indicates that the Insurance Company Law in general was deemed to be applicable to industrial insurance companies." (Commonwealth of Pennsylvania ex rel. Margiotti v. Cosmopolitan Industrial Insurance Company, 46 Dauph. 93 (1939), at page 99).

[19] Except term life insurance and term endowment insurance of 20 years or less.

and delivered in the Commonwealth subsequent to January 1, 1912, and prior to the effective date of the Act of May 17, 1921, P. L. 682, have the full statutory nonforfeiture benefits as provided in section 25, Ninth, of the Act of June 1, 1911, P. L. 581.

(2) That all life and endowment policies[20] issued and delivered in the Commonwealth subsequent to the effective date of the Act of May 17, 1921, P. L. 682, and prior to the operative date of the Standard Non-Forfeiture Law of May 1, 1945, have the full statutory nonforfeiture benefits provided in section 410 (i) (1) of The Insurance Company Law of May 17, 1921.

(3) That all industrial life and industrial endowment policies[21] issued and delivered in the Commonwealth subsequent to January 1, 1912, and prior to the effective date of The Insurance Company Law of 1921 have the full statutory nonforfeiture benefits as provided in section 25, Ninth, of the Act of June 1, 1911, P. L. 582.

(4) That all industrial life and industrial endowment policies[22] issued or delivered in the Commonwealth subsequent to the effective date of The Insurance Company Law of May 17, 1921, and prior to January 1, 1938, have the full statutory nonforfeiture benefits as provided in section 410 (i) (1) of The Insurance Company Law of May 17, 1921.

(5) That all industrial life and industrial endowment policies[23] issued or delivered in the Common-

---

[20] See footnote 19, supra.

[21] Except industrial life insurance and industrial endowment insurance policies where premiums were payable monthly or oftener and term policies of 20 years or less.

[22] See footnote 21, supra.

[23] Such policies as are defined in Section 420B of The Insurance Company Law of May 17, 1921, 40 PS §573.

wealth subsequent to January 1, 1938, and prior to the operative date of the Standard Non-Forfeiture Law of May 1, 1945, have the full statutory nonforfeiture benefits as provided in section 420C of The Insurance Company Law of May 17, 1921.